**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jayson Lamar Wesley, | No. CV-17-00890-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Claimant Jayson Lamar Wesley's appeal of the Social Security Administration's (SSA) decision to deny disability insurance benefits. (Doc. 13). For the following reasons, the Court affirms the denial of benefits.

## BACKGROUND

Jayson Wesley filed for disability benefits on August 7, 2012, alleging a disability onset date of July 12, 2012. Mr. Wesley's application for SSA disability benefits asserts degenerative changes of the cervical spine, thoracic spine, and lumbar spine, bilateral osteoarthritis of the knees, asthma, morbid obesity, and re-herniation at L5-S1 following surgery. (Doc. 13). His claim was denied on October 2, 2012; reconsideration was denied on April 24, 2013. (Tr. 87, 104). Mr. Wesley requested a hearing from an administrative law judge (ALJ), which was held on November 20, 2014 and a supplemental hearing was held on August 12, 2015. The ALJ determined that Mr. Wesley had the following severe impairments: residuals of lumbar surgery, degenerative changes of the cervical and thoracic spine, osteoarthritis of the knees, obesity, and asthma. (Tr. 18). With these

impairments taken into account, the ALJ found that Mr. Wesley had the residual functional capacity ("RFC") to perform light work with certain restrictions (Tr. 19–20). Because the ALJ determined that Mr. Wesley could perform work that exists in significant numbers in the national economy, the ALJ found that Mr. Wesley was not disabled under the Social Security Act. (Tr. 26–27). The Appeals Council denied the request to review, making the Commissioner's decision final. (Tr. 1–4). Mr. Wesley now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

**I. Legal Standard**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When evidence is "subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981, F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II. Analysis**

Claimant alleges that the ALJ erred by (1) improperly formulating the residual

functional capacity (RFC);[1] (2) not evaluating all of the evidence when concluding that Claimant impairments did not meet or equal Listing 1.04A; and (3) discounting Plaintiff's testimony without providing clear and convincing reasons.

### A. Residual Functional Capacity Determination

The ALJ determined that Mr. Wesley had severe impairments, but that they did not meet or medically equal a listed impairment. (Tr. 21). When an impairment does not meet or equal a listed impairment, the ALJ must make a finding about the claimant's RFC. The RFC is then used at steps four and five of the sequential process to determine whether the claimant can return to past relevant work or adjust to other work in the national economy. 20 C.F.R. § 404.1520(e). A claimant's RFC "is the most [the claimant] can still do despite [the claimant's] limitations." *Id*. at § 404.1545(a)(1). In assessing an RFC, ALJs must consider "all of [the claimant's] medically determinable impairments." *Id*. at § 404.1545(a)(2).

#### 1. Claimant's Use of a Cane

Claimant argues that substantial evidence does not support the ALJ's finding that Claimant's cane is not medically necessary. Dr. Angel Gomez performed a consultative examination of Mr. Wesley in April 2015 (post-dating the alleged disability onset). Dr. Gomez's report stated that the use of a cane was not medically necessary and there was no limitation on how far the Claimant could ambulate without the use of a cane. (Tr. 676). He also found that Mr. Wesley could frequently lift and carry up to ten pounds, and could sit, stand, or walk for four hours. (Tr. 674, 676). The ALJ afforded this opinion great weight because it was "consistent with a longitudinal review of the medical records." (Tr. 25). Dr. Gomez also opined that Mr. Wesley could continuously reach, handle, and pull, and could occasionally balance, stoop, and kneel. (Tr. 677). The ALJ afforded this opinion partial weight. (Tr. 25). The ALJ gave the opinion some weight

---

[1] Claimant frames this first objection as an issue related to the date of the records used in determining the RFC. However, the Claimant's brief contains multiple objections about the RFC determination that are broader in nature. The Court considers all of the specific objections in the Claimant's brief.

because Dr. Gomez had the opportunity to evaluate Mr. Wesley and because this opinion was consistent with Dr. Chhabra's 2006 opinion that a cane was not necessary and the 2007 recommendation to engage in daily exercise. Finally, Dr. Gomez opined that Mr. Wesley could climb ropes or ladders. (Tr. 678). The ALJ assigned this little weight because of evidence in the record that the Mr. Wesley had severe neck pain and movement restrictions in that region of the body. (Tr. 25).

Mr. Wesley objects to the ALJ's decision to afford great weight to parts of Dr. Gomez's opinions. A treating physician's opinion is generally afforded greater weight than an examining physician's opinion, but Mr. Wesley does not appear to have provided a treating physician's opinion for the period after the onset date. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). That an ALJ should give greater weight to a treating physician than an examining physician when both opinions are present does not mean that an ALJ is prohibited from giving an examining physician's opinion great weight when no treating physician says to the contrary. Dr. Gomez noted the limitations of his opinion (Tr. 673) and the ALJ considered them when deciding to which parts of the opinion she would give greater weight. (Tr. 25).

Further, in finding that the cane is not medically necessary, the ALJ relied on a statement from Dr. Anikar Chhabra in 2006 that questioned the necessity of the cane. (Tr. 755). The ALJ also noted a provider's recommendation in 2007 that the Claimant engage in daily exercise. (Tr. 518). The recommendation of daily exercise continues to state: "preferably water exercise is recommended for this patient due to his medical condition, severe arthritis, and due to his weight, which exacerbates his arthritis." *Id*. The Claimant has alleged an onset date of July 2012. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance."). These opinions should have little weight, given that they predate the disability's onset. However, as discussed above, the ALJ had another medical opinion to support the RFC formulation that the Claimant's cane is not necessary. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the

ALJ will not be reversed for errors that are harmless."). Further, the Claimant did not provide another physician's medical opinion that the cane was necessary. *See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) ("The claimant has the burden of proof for steps one through four."). The ALJ may have placed an initial and unusual reliance on older opinions, but it was not error to consider them and they do corroborate the one medical opinion that post-dates the disability onset found that the cane was not necessary.

### 2. Obesity

Obesity is no longer considered a Listing Impairment, but ALJs must still ensure that obesity and its effects are considered in making a disability determination. Here, the ALJ found at Step Two that Mr. Wesley had a severe impairment of obesity. Mr. Wesley argues that "substantial evidence does not support the conclusion that the ALJ considered Plaintiffs obesity beyond Step Two." (Doc. 13). However, Claimant cites no physical limitation supported in the record that is caused by obesity and that the ALJ failed to consider. *See Burch*, 400 F.3d at 684 ("Burch has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider."). The Claimant does note that a fusion surgery procedure cannot take place until he loses weight. This surgery would be done to alleviate pain at L5-S1. (Tr. 407). The Claimant argues that because the surgery cannot happen, the assumption should be that the pain continues. The ALJ, however, never discounted the Claimant's pain at L5-S1. The Claimant has not shown that the ALJ failed to consider limitations caused by obesity.

### 3. Re-herniation

Claimant alleges that the ALJ failed to include his re-herniation at Step Two or beyond. The ALJ did not list re-herniation as a severe impairment, but the ALJ did discuss Claimant's issues with the L5-S1 area in formulating the RFC. (Tr. 21). The ALJ noted that "an MRI of the claimant's lumbar spine showed L5-S1 consistent with a left paracentral recurrent disc extrusion which impinged on the nerve root and a small right paracentral disc protrusion mildly impinging on the right L-5 nerve root." *Id*. Thus,

because the limitation was discussed in formulating the RFC, the ALJ's failure to list it as a severe impairment was harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### 4. Vocational Expert Testimony

The Vocational Expert ("VE") testified that an individual with the Claimant's age, education, work experience, and RFC would be able to work as a cashier or food preparation worker. (Tr. 27). Mr. Wesley objects to this finding and argues that the hypothetical posed to the VE was improper given it did not include his use of a cane, and other walking and standing limitations. The ALJ must "pose[ ] hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999) (quoting *Gamer v. Secretary of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987). This Court has already determined that the ALJ did not err in finding that the Claimant's cane is not medically necessary. Thus, the ALJ also did not err by omitting the cane from the hypothetical posed to the VE; the hypothetical set out all of the Claimant's impairments.

### B. Consideration of Listing Impairment

Federal regulations establish certain impairments, outlined in a "Listing of Impairments," that are so serious "the claimant is presumed disabled at step three, and the ALJ need not make any specific findings as to his or her ability to perform past relevant work or other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); *see also* 20 C.F.R. § 416.920(d). Mr. Wesley alleges that his impairments meet the requirements of Listing 1.04A, which addresses disorders of the spine. (Tr. 285, 288); 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 ("Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight-leg raising test."). The ALJ is required to "evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis*, 236 F.3d at 512; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099–1100.

Under Listing 1.04A, the Claimant must show (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitations of motion of the spine; (3) motor loss, muscle weakness, and sensory or reflex loss; and (4) positive straight leg tests. All of these findings must be present simultaneously.[2] The Claimant also needs to demonstrate that the symptoms have lasted or will last for twelve months. 20 C.F.R. § 404.1525(c)(4). Although Claimant's Opening Brief sets forth some evidence of the Listing 1.04A symptoms, Claimant points to no medical record or records that would suggest that these symptoms were found to be present simultaneously or that they meet the durational requirement. The ALJ noted as much in summary fashion stating that: "No treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity. The undersigned has considered the appropriate listings relative to the claimant's impairments and does not find the presence of any criteria set forth in said listings to warrant a finding that the claimant meets or equals any listing." (Tr. 19).. While it might have been preferable to have the ALJ explain in some more detail why the symptoms did not meet the listing, ultimately the conclusion is correct. Thus, the ALJ did not err in finding that the Claimant did not meet his burden of proof.

### C. Claimant's Credibility

When a claimant alleges subjective symptoms, like pain, the ALJ must follow a two-step analysis to decide whether to credit the claimant's testimony. First, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (quoting *Bunnell v. Sullivan*, 947 F.2d 341,

---

[2] In *Radford v. Colvin*, 734, F.3d 288 (4th Cir. 2013), the Fourth Circuit held that the plaintiff could qualify for Listing 1.04A even if the symptoms were not always present simultaneously. After *Radford*, the SSA issued an Acquiescence Ruling ("AR"). The SSA reaffirmed the agency's policy that "listing 1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present." AR 15-1(4), at *4. The SSA directed only ALJs in the Fourth Circuit to follow the *Radford* decision. Therefore, for the rest of the states in other circuits, the SSA continues to require that all symptoms be present simultaneously. The Ninth Circuit has not ruled contrary to the SSA.

344 (9th Cir. 1991)) (quotation marks omitted). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. Second, if the claimant can make the showing required in the first step and the ALJ does not find any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281. The ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)

The ALJ did not find that Mr. Wesley was malingering, but "that the evidence does not support the severity of pain limits alleged." (Tr. 23). The ALJ found that (1) the claimant's providers stated he did not have any limitation in his range of motion; (2) in 2011, the claimant stated medication was controlling his pain; (3) the claimant has provided inconsistent statements to his treating providers about marijuana use; (4) the claimant's limited work history suggests that the claimant lacks motivation to work; (5) the claimant has provided inconsistent statements about his pain; and (6) the claimant did not follow the advice of his treating providers. (Tr. 23–24).

Some of the ALJ's considerations were proper. The ALJ noted that Mr. Wesley had told his physicians that he did not use illicit substances, but that a urine analysis had tested positive for marijuana. (Tr. 23). The Ninth Circuit has held that inconsistent statements about drug use to physicians can be used to support "negative conclusions about [the claimant's] veracity." *Thomas*, 278 F.3d at 959; s*ee also Rusten v. Comm'r of Soc. Sec. Admin.*, 468 Fed. Appx. 717, 719 (9th Cir. 2012) ("Inconsistent or dishonest statements about drug use can be used to infer a lack of veracity in the claimant's other assertions."). Similarly, the ALJ found that Mr. Wesley has had an inconsistent and limited work record, only working two out of the last fifteen years. Thus, the "implication from this record is that the claimant's failure to perform regular work could be the result

of a lack of motivation to work." (Tr. 23). In *Thomas*, the Ninth Circuit upheld an ALJ's consideration of a history of inconsistent work in discounting the claimant's credibility. 278 F.3d at 959. The ALJ's consideration of Mr. Wesley's drug history and work history was proper. Finally, the ALJ noted that Mr. Wesley had not followed up with all of his treatments. (Tr. 24). An ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284). Mr. esley told doctors that he did not follow up because he had believed he was moving. The ALJ noted that Mr. Wesley had missed many appointments and, even if there was no intent to mislead, the inconsistencies suggested a lack of reliability. (Tr. 24). A claimant's "failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012). Although Mr. Wesley objects to the ALJ's consideration of facts which "discredit Plaintiff's credibility in general" (Doc. 13), the Ninth Circuit has consistently held that such considerations are allowed and that ALJs may use "ordinary techniques of credibility evaluation." *Molina*, 674 F.3d at 1112.

      Any errors made by the ALJ were harmless. The ALJ found that despite walking with an antalgic gait, the claimant's providers noted no limitations in his range of movement. Some of the evidence cited by the ALJ, however, does not support this finding. At a November 19, 2014 appointment with a pain management doctor, it was noted that Mr. Wesley was using a cane as an assistive device and, with regards to gait, "conventional walking: antalgic gait" was noted. The use of a cane and "conventional walking: antalgic gait" do not necessarily equal a finding of no limitations in the range of movement. (Tr. 638). A December 16, 2014 appointment with neurosurgery and spine specialists noted Mr. Wesley was "using a walker, antalgic bilaterally." (Tr. 682). There was no finding on range of movement. Multiple appointments between October 2014 and July 2015 with a family medicine physician do note "no limitation of ROM." (Tr. 694,

698, 700, 702, 708, 710). Some providers found that Mr. Wesley did have limitations in his range of movement, particularly in his back. (Tr. 456, 459, 462, 465). But when evidence is "subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198. Some of the statements about Mr. Wesley's walking ability and range of movement are in conflict, and it is to the ALJ to resolve these discrepancies.

Next, the ALJ found that "[i]n 2011, the claimant stated his medication was helping to control his pain." (Tr. 23). In this disability application, Mr. Wesley alleges an onset date of July 2012. The ALJ does not provide an explanation as to how the claimant's statement about his pain control prior to the onset date undermines the claimant's credibility at present. (Tr. 355, 359). Finally, the ALJ found that Mr. Wesley had provided inconsistent statements about his pain, alleging constant pain but also informing providers that the pain was under control. The ALJ supported this finding by citing only one piece of evidence, a March 2015 family medicine appointment, where the doctor noted "[p]ain is stable today rated 8/10, overall good control." The ALJ did not discuss the fact that Mr. Wesley had rated his pain at the level of 8/10. ALJs must consider the record as a whole and cannot isolate certain findings. Although these may have been errors, the ALJ had substantial evidence and findings to discount the Claimant's credibility. The ALJ properly evaluated and considered the Claimant's statements about drug use, his minimal work history, and his failure to seek treatment in doing so. Thus to the extent the ALJ erred in some of the bases for discounting the extent of the symptom testimony of the claimant, it was harmless error.

## CONCLUSION

The ALJ reasonably relied on Dr. Gomez's opinion that the Claimant's cane was not necessary. Dr. Gomez evaluated the Claimant in 2015, after the disability onset date. The Claimant did not provide a contrary medical opinion. The Claimant did not meet his burden of proof to establish that his impairments meet or equal Listing 1.04A; the ALJ did not err in finding the same. Finally, even though some of the ALJ's considerations in

evaluating the Claimant's credibility were improper and relied on an incomplete analysis of the medical record, substantial evidence supported the ALJ's discounting of the Claimant's credibility so any error was harmless. Therefore, the ALJ's decision is upheld.

**IT IS THEREFORE ORDERED** that the ALJ's decision to deny disability benefits is affirmed. The Clerk of the Court is directed to terminate this action and enter judgment accordingly.

Dated this 8th day of June, 2018.

Honorable G. Murray Snow
United States District Judge